UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIONNA CHRISTIAN,

           Plaintiff,

v.

MIDWEST RECOVERY FUND, LLC,
LOCKWOOD ASSET MANAGEMENT GROUP, LLC,
CHALISE OWEN KRENTZ,
CHRISTOPHER D. CARACO,
DUSTIN MICHAEL ELLNOR,
MATTHEW D. FRITTON,
PAUL M. KIRCHBERGER and
FELICIA OLIVIA MCDOWELL,

           Defendants.

_____/

## COMPLAINT

### I.    Introduction

1.    This is an action for damages brought against debt collectors for violating the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Michigan Regulation

of Collection Practices Act ("MRCPA"), M.C.L..§ 445.251 *et seq.,* and Michigan Occupational

Code ("MOC") M.C.L. § 339.901 *et seq.*

2.    Defendants, along with other entities and individuals to be identified in discovery,

are involved in a fraudulent and ongoing scheme whereby they have conspired to use false

representations and threats to coerce the payment of money from consumers across the country

who allegedly have failed to repay payday loans.  This scheme, operated by defendants as well as

many other entities located in and around Buffalo, New York, Atlanta, Georgia and Charlotte,

North Carolina, is based on the use of a script, sometimes known as "The Shakedown" or "The Shake," that includes variations of the following:  The caller calls from a blocked number or uses a telephone number with the consumer's area code, pretends to be a local process server, states to the consumer that "charges" have been filed against the consumer for "breach of contract" or "defrauding a financial institution" and represents that the caller is attempting to locate and serve the consumer with a summons and complaint that has been filed in court against the consumer. The caller suggests that the charges might not be pursued if the consumer calls a toll free number in the next several hours and arranges to pay money to the fake process server's "client" (which often has a name designed to sound like that of a law firm).  Usually, the threatening messages are left indiscriminately (and unlawfully) with the consumer's relatives, employer and other third parties, in order to increase the likelihood of a response.  When the consumer responds to the call, the collector (often posing as an attorney or paralegal) accuses the consumer of misdeed, makes false threats of pending litigation (and sometimes prosecution), and demands payment of the alleged debt.  Of course, no lawsuit has been filed.  Often times the debt is time-barred. Often times, the consumer's personal, financial and account information will have been stolen and will have been sold and resold to multiple parties, such that the caller no longer owns or otherwise has any right to collect the account.  Often times, the loan has been repaid and there is no debt owed.  When sued for violating the FDCPA, most of the entities default, accumulate default judgments, and continue to operate under a progression of limited liability companies, with listed "business" addresses that are nothing more than rented private mail boxes.

3.     The use of these unlawful debt collection practices is epidemic.  See, for example, the Complaint for Permanent Injunction and Other Equitable Relief filed on February 24, 2014 in

the United States District Court, Western District of New York (Buffalo), Case No. 1:14-cv-122,

by the Federal Trade Commission against Federal Check Processing, Inc. and fourteen other debt

collection entities defendants.  See also the complaint filed by the United States of America

against Williams Scott & Associates, LLC *et al.,* U.S. District Court, Southern District of New

York, Case No. 1:14-mj-02546-UA, in which the government alleged that the defendants located

in Norcross, Georgia have continuously engaged in a conspiracy to commit wire fraud and

violated the FDCPA and other laws, through a payday loan collection scheme that is

indistinguishable from the ongoing scheme being perpetrated by the defendants a alleged in this

complaint.  The United States Department of Justice, the Federal Bureau of Investigation, the

Federal Trade Commission, the Consumer Financial Protection Bureau, the attorneys general of

virtually every state, and the Better Business Bureau all have issued press releases that warn

consumers about this ongoing scam.

    4.    On November 4, 2015, the Federal Trade Commission and other law enforcement

authorities around the country announced the first coordinated federal-state enforcement

initiative targeting deceptive and abusive debt collection practices. The "Operation Collection

Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and

local law enforcement authorities against collectors who use illegal tactics such as harassing

phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets

debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do

not actually owe.  See www.ftc.gov/news-events/press-releases/2015**.**

    5.    Even more recently, the federal government has begun to criminally indict

individuals involved in the type of scam that is described in this complaint. See, for example, the

forty-one count indictment filed on March 3, 2016 by the United States of America against Alan
Ceccarelli, in the United States District Court, Western District of New York (Buffalo), Case No.
1:16-cr-00024-EAW-HKS-1, 122, with charges that include Wire Fraud and Aggravated Identity
Theft.

## II.     Jurisdiction

6.     This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C.
§ 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28
U.S.C. § 1367.  Venue in this judicial district is proper because the pertinent events took place
here.

## III.    Parties

7.     Plaintiff Kionna Christian is an adult, natural person residing in Kent County,
Michigan.  Ms. Christian is a "consumer" and "person" as the terms are defined and used in the
FDCPA.  Ms. Christian is a "consumer," "debtor" and "person" as the terms are defined and used
in the MRCPA and MOC.

8.     Defendant Midwest Recovery Fund, LLC ("MRF") is an active Minnesota limited
liability company, with offices at 12100 Single Tree Lane, Suite 133 and/or Suite 163, Eden
Prairie, Minnesota 55344. The registered agent for MRF is Michael O'Connor, 12100 Single
Tree Lane, Suite 163, Eden Prairie, Minnesota 55344. MRF uses interstate commerce and the
mails in a business the principal purpose of which is the collection of debts.  MRF regularly
collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or
due another.  MRF is a "debt collector" as the term is defined and used in the FDCPA.  MRF is a
"regulated person" as the term is defined and used in MRCPA.  Alternatively, MRF is a
"collection agency" and "licensee" as the terms are defined and used in MOC.

9.      MRF directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Christian that are described in this complaint.

10.      MRF maintains an internet website (www.midwestrecoveryfund.com) that states: "Each year Midwest Recovery Fund, LLC purchases more than a half a billion in acquisitions of consumer debt portfolio's [sic], placing it in the top tier of companies performing in this business arena." MRF maintains a business profile at www.linkedin.com/company/mrf-llc that states: "Midwest Recovery Fund, LLC is a premier purchaser of consumer debt with offices throughout the U.S."

11.      MRF is operated by multiple individuals, including Michael O'Connor (President), Andrew Myers (Executive Vice President), and Justin Abbott, (SVP of Sales/Acquisitions).  Mr. Myers uses the MRF internet domain name to send and receive email at andrew@midwestrecoveryfund.com. Mr. Myers is licensed by the State of Minnesota to practice law.

12.      Defendant Lockwood Asset Management Group, LLC ("Lockwood") is an active New York limited liability company, purportedly doing business at 516 Bewley Building, Lockport, New York 14094-2944. Lockwood does business under various unregistered names, including LWAMG, LW & Associates, LW Management and LWAMG Asset Management, LLC.  Lockwood is owned and managed by defendant Chalise Owen Krentz. The registered agent for Lockwood is Corporation Service Company, 80 State Street, Albany, New York 12207. Lockwood uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Lockwood  regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Lockwood is a "debt collector" as the term is defined and used in the FDCPA. Lockwood is a "regulated person" as the term is defined

and used in the MRCPA.  Alternatively, Lockwood is a "collection agency" and "licensee" as the

terms are defined and used in MOC.

13.     Lockwood directly and indirectly participated in the unlawful debt collection

practices to collect an alleged debt from Ms. Christian that are described in this complaint.

14.     Lockwood maintains an internet website (www.lwamg.com) that states:

"LWAMG management is one of today's most progressive debt recovery companies." The

website provides a contact telephone number of 866-540-2688 and an email address of

customersupport@lwamg.com.

15.     Defendant Chalise O. Krentz, also known as "Chaz" Krentz, age 25, is a natural

person, purportedly residing at 189 Olcott Street, Lockport, New York 14094-1503, or possibly

5871 West Jackson Street, Lockport, New York 14094-1735. Mr. Krentz has telephone number

716-359-4250 registered to his use. Mr. Krentz is an owner, officer, manager, employee and

agent of defendant Lockwood. Mr. Krentz uses interstate commerce and the mails in a business

the principal purpose of which is the collection of debts. Mr. Krentz regularly collects or attempts

to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr.

Krentz is a "debt collector" as the term is defined and used in the FDCPA. Mr. Krentz is a

"regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Krentz is a

"collection agency" and  "licensee" as the terms are defined and used in the MOC.

16.     Mr. Krentz (a) created the collection policies and procedures used by Lockwood

and its employees and agents, in connection with their common efforts to collect consumer debts,

(b) managed or otherwise controlled the daily collection operations of Lockwood, (c) oversaw

the application of the collection policies and procedures used by Lockwood and its employees

and agents, (d) drafted, created, approved and ratified the tactics and scripts used by Lockwood

and its employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Christian as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by Lockwood and its employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by Lockwood and its employees and agents in attempts to collect an alleged debt from Ms. Christian as alleged in this complaint.

17.     Mr. Krentz directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Christian that are described in this complaint.

18.     Defendant Christopher D. Caraco, age 26, is a natural person, purportedly residing at 33 Vermont Avenue, Lockport, New York 14094-5729. Mr. Caraco is an employee and agent of Lockwood. Mr. Caraco is an agent of MRF. Mr. Caraco uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Caraco regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Caraco is a "debt collector" as the term is defined and used in the FDCPA. Mr. Caraco is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Caraco is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

19.     Mr. Caraco directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Christian that are described in this complaint.

20.     Defendant Dustin Michael Ellnor, age 25, is a natural person, purportedly residing at 163 North Transit Road, Lockport, New York 14094-1415. Mr. Ellnor is an employee and agent of Lockwood. Mr. Ellnor is an agent of MRF. Mr. Ellnor uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Ellnor regularly

collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Ellnor is a "debt collector" as the term is defined and used in the FDCPA. Mr. Ellnor is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Ellnor is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

21.     Mr. Ellnor directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Christian that are described in this complaint.

22.     Defendant Matthew D. Fritton, age 26, is a natural person, purportedly residing at 300 High Street, Apartment 6, Lockport, New York 14094-4659. Mr. Fritton is an employee and agent of Lockwood. Mr. Fritton is an agent of MRF. Mr. Fritton uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Fritton regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Fritton is a "debt collector" as the term is defined and used in the FDCPA. Mr. Fritton is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Fritton is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

23.     Mr. Fritton directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Christian that are described in this complaint.

24.     Defendant Paul M. Kirchberger, age 35, is a natural person, purportedly residing in a trailer park located at 6035 South Transit Road, Lot 161, Lockport, New York 14094-9694. Mr. Kirchberger is an employee and agent of Lockwood. Mr. Kirchberger is an agent of MRF. Upon information and belief, Mr. Kirchberger collects debts using the alias "Paul Matthews." Mr. Kirchberger uses interstate commerce and the mails in a business the principal purpose of

which is the collection of debts. Mr. Kirchberger regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Kirchberger is a "debt collector" as the term is defined and used in the FDCPA. Mr. Kirchberger is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Kirchberger is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

25.     Mr. Kirchberger directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Christian that are described in this complaint.

26.     Mr. Kirchberger previously owned and operated North American Arbitration Group LLC, a New York limited liability company, through which Mr. Kirchberger collected consumer debts. The internet website for the Better Business Bureau for Upstate New York has given Mr. Kirchberger's company a rating of "F" and has posted an alert, warning consumers that North American Arbitration Group LLC has engaged in the same unlawful debt collection practices that are described in this complaint.

27.     Defendant Felicia Olivia McDowell, age 24, is a natural person, purportedly residing at 5793 Sweetwood Drive, Apartment B, Lockport, New York 14094-5859. Ms. McDowell is an employee and agent of Lockwood. Ms. McDowell is an agent of MRF. Ms. McDowell uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Ms. McDowell regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Ms. McDowell is a "debt collector" as the term is defined and used in the FDCPA. Ms. McDowell is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Ms. McDowell is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

28.     Ms. McDowell directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Christian that are described in this complaint.

29.     An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf.  *See, e.g., Pollice v. Nat'l Tax Funding, L.P.,* 225 F.3d 379, 404 (3rd Cir. 2000); *Verburg et al. v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL 1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

30.     A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

**IV.   Facts**

31.     In or about August of 2015, plaintiff Kionna Christian borrowed approximately $500.00 from ACAC, Inc., doing business as Approved Cash ("Approved Cash"), in what is commonly known as a "payday loan."  Ms. Christian used the borrowed money to purchase

goods or services for personal, family and household purposes.

32.     Ms. Christian became unable to repay the debt and the account became

delinquent.

33.     Approved Cash charged off Ms. Christian's account and related debt.

34.     When Approved Cash charged off Ms. Christian's account, the total amount of the

unpaid debt was $592.33.

35.     Approved Cash sold Ms. Christian's charged-off account to defendant Midwest

Recovery Fund, LLC.

36.     Alternatively, Approved Cash retained ownership of Ms. Christian's charged-off

account and placed the account with MRF for collection.

37.     MRF placed Ms. Christian's charged-off account with defendant Lockwood Asset

Management Group, LLC for collection.

38.     On April 26, 2016, Lockwood and its female employee placed a call to a cellular

telephone belonging to Ms. Christian's brother-in-law, Michael Christian, and left the following

scripted message on Michael Christian's voice mail: "Hi. This message is intended solely for

Kionna Christian. This number is listed as a number of interest in a legal dispute in my office.

Please contact Cindy Lake at 1-855-764-8892 to retain further details regarding Case Number

BM8505573."

39.     On April 26, 2016, Lockwood and its female employee placed a call to a cellular

telephone belonging to Ms. Christian's mother, Jan Bentley, and left the following scripted

message on Jan Bentley's voice mail: "Hi. This message is intended solely for Kionna Christian.

This number is listed as a number of interest in a legal dispute in my office. Please contact Cindy

11

Lake at 1-855-764-8892 to retain further details regarding Case Number BM8505573."

40.     On April 26, 2016, Lockwood and its female employee placed a call to a cellular telephone belonging to Ms. Christian's sister, Tasheena Walton, and left the following scripted message on Tasheena Walton's voice mail: "Hi. This message is intended solely for Kionna Christian. This number is listed as a number of interest in a legal dispute in my office. Please contact Cindy Lake at 1-855-764-8892 to retain further details regarding Case Number BM8505573."

41.     On April 26, 2016, Lockwood and its female employee placed a call to a cellular telephone belonging to Ms. Christian's brother-in-law, Reginald Walton, and left the following scripted message on Reginald Walton's voice mail: "Hi. This message is intended solely for Kionna Christian. This number is listed as a number of interest in a legal dispute in my office. Please contact Cindy Lake at 1-855-764-8892 to retain further details regarding Case Number BM8505573."

42.     On April 26, 2016, Lockwood and its female employee placed a call to a cellular telephone belonging to Ms. Christian's sister, Tyronda Christian, and left the following scripted message on Tyronda Christian's voice mail: "Hi. This message is intended solely for Kionna Christian. This number is listed as a number of interest in a legal dispute in my office. Please contact Cindy Lake at 1-855-764-8892 to retain further details regarding Case Number BM8505573."

43.     On April 26, 2016, Lockwood and its female employee placed a call to a cellular telephone belonging to Ms. Christian, and left the following scripted message on Ms. Christian's voice mail: "Hi. This message is intended solely for Kionna Christian. This number is listed as a

number of interest in a legal dispute in my office. Please contact Cindy Lake at 1-855-764-8892 to retain further details regarding Case Number BM8505573."

44.     On April 26, 2016, a return call was placed to telephone number 855-764-8892. The call was answered by a Lockwood female employee. In the ensuing conversation, the Lockwood female employee made the following statements:

a)      "We are LW & Associates."

b)      "We're a mediation firm and what we do is help prepare different cases for court."

c)      Ms. Christian "has a pending legal case."

The call was transferred to a Lockwood male employee who identified himself as Paul Matthews. In the ensuing conversation, the Lockwood male employee made the following statements:

d)      "This in regard to a defaulted loan [Ms. Christian] had with Approved Cash Advance."

e)      The loan was made on August 31, 2015. The check came back as dishonored on October 6, 2015.

f)      "The store held the check for four months, then they sent it to our office. It was in our Pre-Legal Department for thirty days. And now it's reached our Legal Department which means we're supposed to have a judgment issued against it."

g)      "Once the judgment goes through, [Ms. Christian's] responsible for all the legal expenses that the store would have to pay out of pocket."

h)      "She's responsible for up to $2,500.00 of legal expenses."

13

i)      Ms. Christian currently owes $742.33.

j)      "We're about to do a filing on it and are trying to give her the courtesy

first to handle it before it got filed."

k)      "When the judgment goes through they try to go after any new wage

garnishments, checking and savings account freezes, and tax warrants."

l)      "The company she owes the money to is Approved Cash Advance. Our

office is LW Associates. We actually handle all of Approved Cash's

defaulted loans. We do the judgments for them. We are the mediation

firm. So what we do here is we would help them retain an attorney. Once a

judgment's placed, we also help them with recuperating [sic] the funds.

Like I said, the wage garnishment."

m)     "We have different services, we track people's jobs, based on finding their

payroll companies where they receive income, we track the FDIC if we get

a hint that there's an open checking and savings account to see if she's the

primary or secondary or assignor on the account. We would put a freeze on

the account. The bank would leave the freeze on for thirty days and the

bank does a hundred dollar penalty for this occurring to them. After thirty

days the bank relinquishes up to the full amount of the judgment to our

office, they take the freeze off the account, whatever is left over goes back

to her. However, if there's not enough to satisfy the judgment, the bank

will relinquish up to the judgment amount to our office and she would still

owe the difference, and they would take the freeze off, and we would

monitor the bank account and put a freeze on again until it gets taken care of, and now she would owe the IRS, and we would put a warrant in with them, which means that the IRS would seize any state or federal tax earnings that she would have coming to her. The way the IRS does that is they don't relinquish to our office, they hold it , she would have to call our office, pay the full amount of the judgment on a credit card, and once we have confirmation that full amounts are paid on the credit card, then the IRS will relinquish the hold off the tax return."

n)   "If she handles it with us, she's only paying $742.33. If she lets a judgment go through, she is responsible for the attorney fee retainer of $1,500.00, $200.00 to file the judgment, $150.00 to have the document issued. The attorney fee retainer is $1,500.00, I would estimate the other fees to be $500.00. She will be responsible for $2,500.00 in fees."

o)   "If she resolves this with us, we will update her credit report as paid in full."

p)   "We are LW & Associates. We are located in Beaverton, Oregon."

q)   "Our email address is customersupport@lwamg.com."

45.   The above-described threats and representations made by defendants' employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to coerce the payment of money from thousands of consumers across the country through the use of false threats, intimidation, extortion and unlawful harassment of the consumers, their relatives and other third parties.

46.     Defendants and their employees and agents failed to meaningfully identify themselves and their companies.

47.     Defendants and their employees and agents falsely represented the amount of Ms. Christian's alleged debt.

48.     Defendants and their employees and agents falsely represented and falsely implied that Lockwood has a legal department.

49.     Defendants and their employees and agents falsely represented and falsely implied that lawyers were involved in the efforts to collect the alleged debt.

50.     Defendants and their employees and agents falsely represented and falsely implied that lawyers would become involved in the efforts to collect the alleged debt.

51.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit was going to be filed against Ms. Christian to collect the alleged debt.

52.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit already had been filed against Ms. Christian to collect the alleged debt.

53.     Defendants and their employees and agents falsely represented and falsely implied that Ms. Christian's wages would be garnished to collect the alleged debt.

54.     Defendants and their employees and agents falsely represented and falsely implied that Ms. Christian's bank accounts would be frozen if she did not pay money to defendants.

55.     Defendants and their employees and agents falsely represented and falsely implied that if Ms. Christian did not pay money to defendants, then the Internal Revenue Service would become involved in the efforts to collect money from Ms. Christian.

56.     Defendants and their employees and agents falsely represented and falsely implied

that they are a mediation firm.

57.     Defendants and their employees and agents falsely represented and falsely implied that they help prepare cases for court.

58.     Defendants and their employees and agents falsely represented and falsely implied that Ms. Christian has a pending legal case.

59.     Defendants and their employees and agents falsely represented and falsely implied that Ms. Christian's account was in defendants' Legal Department, meaning that they are supposed to have a judgment issued against Ms. Christian.

60.     Defendants and their employees and agents falsely represented and falsely implied that once the judgment goes through, Ms. Christian would be responsible for all the legal expenses that the store would have to pay out of pocket.

61.     Defendants and their employees and agents falsely represented and falsely implied that Ms. Christian would be responsible to pay up to $2,500.00 of legal expenses.

62.     Defendants and their employees and agents falsely represented and falsely implied that Ms. Christian currently owes $742.33.

63.     Defendants and their employees and agents falsely represented and falsely implied that the credit bureaus were reporting the debt on Ms. Christian's credit reports.

64.     Defendants and their employees and agents falsely represented and falsely implied that if Ms. Christian paid money to defendants, then defendants would report to the credit bureaus that the debt had been paid in full.

65.     Defendants and their employees and agents falsely represented and falsely implied that they are located in Beaverton, Oregon.

66.     Defendants did not intend to file a lawsuit against Ms. Christian in any Michigan court in efforts to collect the alleged debt.  In fact, no defendant has ever filed any lawsuit in any Michigan court to collect any debt from any person.

67.     The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

68.     The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

69.     The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

70.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

71.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

72.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.  15 U.S.C. § 1692e(3).

73.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such

18

action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. §
1692e(4).

74.    The FDCPA states that it is unlawful for a debt collector to threaten to take any
action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

75.    The FDCPA states that it is unlawful for a debt collector to falsely represent or
imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to
lose any claim or defense to the payment of the debt.  15 U.S.C. § 1692e(6)(A).

76.    The FDCPA states that it is unlawful for a debt collector to falsely represent or
imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to
become subject to any practice prohibited by the FDCPA.  15 U.S.C. § 1692e(6)(B).

77.    The FDCPA states that it is unlawful for a debt collector to communicate to any
person credit information which is known or which should be known to be false.  15 U.S.C. §
1692e(8).

78.    The FDCPA states that it is unlawful for a debt collector to use any false
representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. §
1692e(10).

79.    The FDCPA states that it is unlawful for a debt collector to communicate in a
communication with a consumer to fail to disclose that the communication is from a debt
collector.  15 U.S.C. § 1692e(11).

80.    The FDCPA states that it is unlawful for a debt collector to falsely represent or
imply that documents are legal process.  15 U.S.C. § 1692e(13).

81.    The FDCPA states that it is unlawful for a debt collector to use any business,

company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

82.     The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

83.     The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

84.     Defendants and their employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(2)(A), (2)(B), (3), (4), (5), (6)(A), (6)(B), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

85.     Defendants and their employees and agents falsely represented and falsely implied that Ms. Christian had committed a crime. Ms. Christian did not commit a crime under Michigan law because the Michigan Deferred Presentment Service Transactions Act, which regulates payday lending in Michigan, expressly states that the borrower in a payday loan transaction "is not subject to any criminal penalty in the event the drawer's check is dishonored."  M.C.L. § 487.2158(4).

86.     Morever, M.C.L. § 750.213 states in pertinent part:

Sec. 213.  MALICIOUS THREATS TO EXTORT MONEY – Any person who shall, either orally or by a written or printed communication, maliciously threaten to accuse another of any crime or offense . . .  with intent to extort money or any pecuniary advantage whatever . . . shall be guilty of a felony, punishable by imprisonment in the state prison not more than 20 years or by a fine of not more than 10,000 dollars.

Collection of a valid, enforceable debt does not permit malicious threats of injury if payment is not made.  *People v. Maranian*, 359 Mich. 361 (1960).

87.     Defendants and their employees and agents attempted to extort money from Ms. Christian and violated M.C.L. § 750.213.

88.     Defendants and their employees and agents failed to timely send to Ms. Christian a notice containing the information required by 15 U.S.C. § 1692g(a).

89.     A debt collector may not communicate, in connection with the collection of a debt, with any person other than the consumer, except to acquire "location information" about the consumer.  15 U.S.C. § 1692b; 15 U.S.C. § 1692c(b).

90.     The FDCPA defines "location information" to mean "a consumer's place of abode and his telephone number at such place, or his place of employment."  15 U.S.C. § 1692a(7).

91.     A debt collector when communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall identify himself, state that he is confirming or correcting location information concerning the consumer, and not state that such consumer owes any debt.  15 U.S.C. § 1692b.

92.     Defendants and their employees and agents placed telephone calls to five of Ms. Christian's relatives and unlawfully left scripted messages on each relative's voice mail, wrongfully and falsely representing and implying that Ms. Christian was involved in a "legal dispute," that a lawsuit had been filed against Ms. Christian, and that the lawsuit had been assigned "Case Number BM8505573."

93.     Defendants and their employees and agents in the described unlawfully communicated with Ms. Christian's relatives and violated the FDCPA, 15 U.S.C. § 1692b(2) and

15 U.S.C. § 1692c(b).

94.     Each defendant and each defendant's employees, managers, owners, agents, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

95.     Defendants and their employees, managers, owners, agents, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA, MRCPA and MOC.

96.     MRF was aware of the unlawful debt collection practices being used by its agents, Lockwood and Lockwood's employees. MRF has been sued before for allegedly violating the FDCPA by placing accounts for collection with collection agencies that use the same unlawful debt collection practices that are described in this complaint.

97.     On April 27, 2016, Ms. Christian spoke by telephone with Approved Cash and was told by Approved Cash that Ms. Christian's account had been transferred to MRF and that Ms. Christian would need to contact MRF to obtain any information regarding the status of her account.

98.     On April 27, 2016, an email was sent to MRF, requesting information regarding Ms. Christian's Approved Cash account. MRF did not respond to the email and instead forwarded the email to its agent, Lockwood, or otherwise communicated with Lockwood regarding the email.  Moments after that, a Lockwood employee telephoned Ms. Christian regarding the email.

99.     On April 27, 2016, a second email was sent to MRF, again requesting information regarding Ms. Christian's Approved Cash account and asking why Lockwood and not MRF had responded to the first email. Moments later, Mr. Myers, Vice President of MRF, responded by

email with the following statement: "Thank you for contacting us. **Lockwood is collecting on our behalf so yes that is the correct company to work with.** Thank you." (Bold type added.)

100.    The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).

101.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

102.    As an actual and proximate result of the acts and omissions of defendants and their employees, managers, owners, agents, affiliates and co-conspirators, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which she should be compensated in an amount to be established by jury and at trial.

V.    **Claims for Relief**

**Count 1 – Fair Debt Collection Practices Act**

103.    Plaintiff incorporates the foregoing paragraphs by reference.

104.    Each defendant has violated the FDCPA.  Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)    Defendants violated 15 U.S.C. § 1692b;

b)     Defendants violated 15 U.S.C. § 1692c;

c)     Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural

consequence of which is to harass, oppress, or abuse a person in connection with

the collection of a debt;

d)     Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading

representations and means in connection with the collection or attempted

collection of a debt;

e)     Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means

to collect or attempt to collect a debt from plaintiff; and

f)     Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)     Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)     Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)     Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)     Such further relief as the court deems just and proper.

### Count 2 – Michigan Regulation of Collection Practices Act

105.   Plaintiff incorporates the foregoing paragraphs by reference.

106.   Each defendant has violated the MRCPA.  Each defendant's violations of the

MRCPA include, but are not necessarily limited to, the following:

a)     Defendants violated M.C.L. § 445.252(a) by communicating with a debtor in a

misleading or deceptive matter, including simulated judicial process;

b)     Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading,

untrue, or deceptive statement or claim in a communication to collect a debt;

c)        Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)        Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, or sale of the debtor's property;

e)        Defendants violated M.C.L. § 445.252(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)        Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

g)        Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)        Actual damages pursuant to M.C.L. § 445.257(2);

b)        Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)        Statutory damages pursuant to M.C.L. § 445.257(2);

d)        Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)        Equitable relief pursuant to M.C.L. § 445.257(1).

### Count 3 – Michigan Occupational Code

107.    Plaintiff incorporates the foregoing paragraphs by reference.

108.    Each defendant has violated the MOC.  Each defendant's violations of the MOC include, but are not necessarily limited to, the following:

a)    Defendants violated M.C.L. § 339.915(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)    Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)    Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)    Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

e)    Defendants violated M.C.L. § 339.915(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)    Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

g)    Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

h)    Defendants violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)    Actual damages pursuant to M.C.L. § 339.916;

b)      Treble the actual damages pursuant to M.C.L. § 339.916;

c)      Statutory damages pursuant to M.C.L. § 339.916;

d)      Equitable relief pursuant to M.C.L. § 339.916; and

e)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

**Demand for Trial by Jury**

Plaintiff demands trial by jury.

Dated: May 11, 2016                        /s/ Phillip C. Rogers
                                           Phillip C. Rogers (P34356)
                                           Attorney for Plaintiff
                                           40 Pearl Street, N.W., Suite 336
                                           Grand Rapids, Michigan 49503-3026
                                           (616) 776-1176
                                           ConsumerLawyer@aol.com